SOHIGRO SERVICE COMPANY, Appellant, v. THE INDUSTRIAL COM-
MISSION *et al.* (Roger Brasel, Appellee.)

Third District (Industrial Commission Division)   No. 3—87—0761WC

Opinion filed July 19, 1988.

Kenneth F. Werts and Richard C. Hayden, both of Craig & Craig, of Mattoon, for appellant.

Rick E. Janov, of Manion, Janov, Devens & Fahey, Ltd., of Danville, for appellee.

JUSTICE CALVO delivered the opinion of the court:

Claimant, Roger Marvin Brasel, sought compensation under the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1979, ch. 48, par. 138.1 *et seq.*) alleging that he sustained injuries arising out of and

during the course of his employment with Sohigro Service Company (Sohigro). The arbitrator, Angelo Caliendo, found that claimant did not sustain injuries arising out of and during the course of his employment and thus denied compensation. The Industrial Commission (the Commission) reversed the arbitrator's decision and awarded claimant compensation for temporary total disability of 98⁵/₇ weeks, permanent disability to the extent of 25% of a person as a whole, and medical expenses. The trial court confirmed the Commission's award. Sohigro appeals the trial court's decision.

Sohigro presents two issues for review. First, whether the decision of the Commission that claimant's injuries arose out of and during the course of his employment was against the manifest weight of the evidence. Second, whether the Commission erred in ruling that certain testimony did not violate the Dead Man's Act (Ill. Rev. Stat. 1983, ch. 110, par. 8—201 *et seq.*), and thus finding that Sohigro received notice of the accident.

Claimant worked as a service operator for Sohigro for approximately 1½ years prior to October 1979. One of his duties involved loading and unloading railroad cars. Claimant testified that on October 12, 1979, he slipped while opening a railroad car door, fell flat on his back, and sustained back injuries. His body went completely numb for a short time after the fall, and when he got up, he felt a sharp pain in his lower back. Claimant testified that Earl Thompson, a fellow employee, helped claimant get up and commented that he was surprised that claimant could stand. Claimant and Thompson went to the office and the secretary, Neena Christiansen, brushed off claimant's coat. Claimant also testified that he was in so much pain that his head hurt and he felt nauseous. Claimant thus returned home early and went to bed. Claimant lived with his parents at the time. Claimant testified that Joe Bury, the outlet manager, visited him at his home that evening. Bury was in charge of handling the workers' compensation claims for Sohigro. Claimant testified that he told Bury about the accident at work. Bury died June 15, 1980, prior to the arbitration hearing.

Claimant initially testified that he returned to work the day after the accident, but subsequently stated that he returned two days later. Claimant testified further that between the accident and the day before Thanksgiving, he only worked when Christiansen called him in, and he spent most of his time in bed. Claimant's time sheets for October and November showed that claimant was not absent from work until November 30, 1979, and in fact worked between 32 hours and 65 hours per week during that period. Claimant still experienced pain in

his lower back and legs after he returned to work. Immediately before Thanksgiving, claimant's family doctor, J. E. Dailey, examined and X rayed claimant, and instructed him to stay home and rest for three months. Claimant followed this advice. Claimant went back to work from March through August of 1980. Claimant continued to have back pain, which limited the type of work he could perform during that period. Claimant testified that he did not have this type of pain and he did not have difficulty performing his job prior to the accident.

Claimant was subsequently referred to several doctors, including Dr. Menguay, an orthopedic specialist, and Dr. Robert H. Leak. In August 1980, claimant entered St. Elizabeth's Hospital in Lafayette, Indiana, for a myelogram. Dr. Lloyd William Lempke, an orthopedic surgeon, examined claimant at the hospital and performed the myelogram. Claimant testified that he was bedridden and his time sheets revealed that he did not return to work for the next two months; he returned to work on October 30, 1980. Upon his return to work, claimant presented the new manager with a note from Lempke limiting claimant to light duty. The manager instructed claimant to move some heavy metal. Claimant testified that he could not pick up the metal so he went home. Claimant did not return to work afterwards.

Between August 1980 and January 1981 claimant continued to receive treatment and physical therapy for his back at the hospital. In January 1981, Lempke performed a discectomy to repair claimant's herniated disc at the L—5 S—1 vertebrae. After the surgery, claimant continued to receive medication and physical therapy until January 1982. In January and April of 1982, the Mayo Clinic examined and performed tests on claimant related to his back injury. Claimant testified that he continued to have pain in his back when he walked, sat or stood, and that his legs occasionally collapsed underneath him, causing him to fall.

Claimant initially testified that the accident took place on October 12, 1979. Claimant also stated that he told his doctors that the accident occurred on October 12. On redirect examination, however, claimant testified that the accident took place on October 8 or October 9 or sometime in early October 1979. Claimant's time sheet reflected that claimant worked a full day on October 8, October 9 and October 12. Claimant also testified, however, that if the employees were scheduled to work for a full day, they would get paid for the full eight hours regardless of whether they actually worked the full day. Claimant subsequently amended his application for adjustment of claim to show an accident date of October 9, 1979, rather than October 12, 1979, the date reflected in the original claim. Claimant testi-

fied that on the day before Thanksgiving, after he was examined by the doctor, he went to the insurance office, but could not remember the exact date of the accident, so he chose October 12.

Claimant testified that he told Dr. Baird and Dr. Bryan, two of the doctors he sought treatment from after the accident, that he had not had any prior back problems. Claimant admitted, however, that he had a muscle spasm in 1978 and that he had his back X rayed in 1969 after an accident with his pickup truck. Claimant testified that he fully recovered from both incidents. Claimant also testified that during the summer of 1980 he was driving a sprayer for Bury, unrelated to his employment with Sohigro, which upset or rolled over. Steven Paul Mencschel, claimant's coemployee, testified that after the work incident, and outside the scope of their employment with Sohigro, he and claimant were moving bales of hay when claimant may have been struck by a 50- to 60-pound bale of hay that fell seven feet out of a haymow. Mencschel stated that he was doing most of the physical labor and claimant supervised. Mencschel stated further that prior to claimant's accident at Sohigro, claimant performed heavy work, but after the Sohigro accident claimant did very little physical labor because he would black out and experience pain.

Georgia P. Brasel, claimant's mother, testified that Bury visited her home on October 12, 1979. Georgia also used to work for Bury at Sohigro. Bury told Georgia that claimant was injured at work that day. Claimant also told Georgia about the work accident. Georgia told Bury that claimant was in bed. Bury returned the following day and inquired as to whether claimant was able to return to work. Georgia testified that prior to October 12, 1979, claimant appeared to be in a normal physical condition, but after that day he was in severe pain, could not walk, and had to crawl on his hands and knees to get to the bathroom.

Claudette Brasel, claimant's sister-in-law, was married to Bury at the time of the accident. She testified that Bury told her sometime around October 12, 1979, that claimant was injured at work. Linda Brasel, claimant's wife, testified that in the beginning of October 1979 Christiansen, who was a friend of Linda's, told Linda that claimant had been injured at work. Linda also testified that after the accident claimant could hardly walk.

In the fall of 1979, claimant, Bury, Christiansen, Roy Oliver Kohl, Earl Thompson, Mencschel and Charles Allen were the only employees at Sohigro. Kohl, who was working at the time of the accident, testified that he did not observe claimant's accident, although he was not necessarily at the same location as claimant at the time of the ac-

cident. Kohl stated that prior to the accident claimant was slumped over and did not walk fast or in a normal manner, and after the accident claimant would not pick up heavy objects. Thompson testified he did not notice a change in claimant's physical appearance or movements, and he did not recall claimant's accident.

Christiansen testified that she took care of the bookkeeping, employee records and shipping records at Sohigro. She testified that Sohigro's records revealed that a railroad car was not unloaded on October 12, 1979, but one was unloaded on October 9. Sohigro introduced into evidence a letter to Jan Ford, an employee relations representative in Sohigro's Lima, Ohio, office, written by Christiansen as dictated by Bury. The letter said that claimant would be absent from work from December 1, 1979, through March 1, 1980, due to a nonoccupational injury. Christiansen stated that although she received and processed the workers' compensation claims, she did not receive any notice or papers for such claims regarding claimant's accident in October 1979. She also stated that she did not observe and did not otherwise become aware that claimant was injured in October 1979. Christiansen stated further that prior to October 1979 claimant exhibited no abnormal physical signs, but after that time he complained of back pain.

The medical evidence revealed that claimant was first examined by a doctor, specifically Dailey, on November 28, 1979. In his May 22, 1981, report, Dailey stated that the work accident took place in October 1979. Dailey treated claimant for the back pain periodically throughout 1979 and 1980. Dailey also referred claimant to Menguay. In addition, Leak examined claimant in May and July of 1980. Leak's report stated that claimant was injured on October 12, 1979.

Lempke first examined claimant in August of 1980. Lempke took a myelogram of claimant, diagnosed a herniated disc, and as a result performed a discectomy at the L—5 S—1 vertebrae on January 8, 1981, at St. Elizabeth's Hospital. Lempke stated that claimant said the work accident occurred in October 1979. The hospital records also state that the accident occurred in October 1979. Lempke testified by deposition that the work accident caused claimant's subsequent herniated disc and related back pain.

Dr. Frank Mathews, a neurologist, examined claimant on July 7, 1981. He testified that claimant's herniated disc was consistent with the trauma to claimant's back in October 1979. Moreover, Dr. A. W. Baird, who examined claimant on November 19, 1981, testified by deposition that claimant's work accident could have caused the herniated disc. Baird, however, also found a disc lesion at the L—3 L—4

vertebrae and a fracture of the anterior superior body of the L—4 vertebra which antedated the work accident.

Dr. Richard S. Bryan, an orthopedic surgeon, testified by deposition that he first examined claimant on April 28, 1982. He stated that claimant said the accident occurred on October 12, 1979, but claimant also admitted that he was not sure of the exact date of the accident. Bryan stated that he could not find any orthopedic explanation for claimant's current pain and that claimant's pain was not now related to his disc problem.

Sohigro argues that claimant did not prove that his injuries arose out of and during the course of his employment. Sohigro points to several pieces of evidence to support its position. First, it notes that the testimony of claimant's family members should be accorded very little weight because they are biased. Second, claimant could not pinpoint the exact date of the injury. Claimant testified that he told his doctors the accident occurred on October 12. Several of claimant's witnesses testified that the accident took place on October 12. Claimant even testified that the accident occurred on October 12. Claimant then changed his mind and stated that the accident could have taken place on October 9, or October 8, or sometime in early October, because testimony revealed that a railroad car was not unloaded on October 12. Thus, claimant amended his application for adjustment of claim to reflect an accident date of October 9.

Third, claimant testified that Thompson helped him after the accident, but Thompson testified that he did not recall the accident. Claimant also testified that he saw Christiansen after the accident and she brushed off his coat, but Christiansen testified that she had no knowledge of the accident. Kohl also denied any knowledge of the accident, although he was working that day. Moreover, claimant testified that he went home early on the day of the accident, but his time sheet revealed that he worked a full day on October 12 and October 9.

Fourth, although several witnesses testified that Bury knew or was told about the accident, the letter by Bury to Ford that claimant would be absent from December 1979 to March 1980 due to a nonoccupational injury contradicted that testimony. Fifth, claimant's time sheets revealed that he did not miss any time after the accident until November 30, 1979. Claimant testified, however, that he worked the day after the accident, but then later testified that he returned to work two days after the accident. Claimant also testified that after the accident he only worked when Christiansen called him in, but claimant's wife and mother testified that claimant could barely walk after the accident. Claimant's time sheets showed that he worked be-

tween 32 and 60 hours per week after the accident. Moreover, he did not seek medical attention until 1½ months after the accident.

On the other hand, claimant presented other evidence sufficient to prove that he sustained injuries from an accident at work. Claimant testified that he fell at work and subsequently experienced back pain and had difficulty walking. Claimant stated that Thompson helped him after the accident. Thompson did not deny that the accident occurred, but just stated that he did not remember the incident. Although Kohl stated that he did not see the accident, he also admitted that he might not have been with claimant at the time the accident occurred. Claimant testified that he told Bury about the accident. Claimant's mother testified that claimant said he was injured at work. She also testified that Bury visited claimant twice at home to check on his well-being. Claimant's wife and mother both testified that claimant had trouble walking after the accident. Claimant's wife also stated that Christiansen informed her about claimant's accident. Bury's wife testified that Bury told her about claimant's accident. All of this testimony contradicted Bury's letter in which he told Ford that claimant suffered from a nonoccupational injury. Although the testimony of claimant's relatives may be given less weight because their credibility may be lower, the Commission did not have to ignore it. The Commission could have given the testimony whatever weight it deemed appropriate.

Claimant's time sheet showed that he worked a full day on October 9 and October 12, but claimant testified that he went home early on the day of the accident. Claimant, however, also testified that the employees were often paid for a full day, even if they left work early, if they were scheduled to work the entire day. Moreover, although claimant worked full time for several weeks after the accident, he testified that he experienced pain in his back and legs during this time. Other witnesses also said that claimant did not walk normally and could not lift heavy objects after the accident.

Claimant sufficiently explained his inaccuracy as to the date of the accident. Claimant did not seek medical treatment until over one month after the accident. At that time he had to give his insurance company the accident date. Because he could not remember the date, he chose October 12 as being the closest date. Claimant, thereafter, used October 12 as the accident date. He told most of his doctors that the accident occurred on October 12. Some of claimant's other witnesses testified that the accident took place on or around October 12. At the arbitration hearing, however, Sohigro's records showed that no railroad cars were unloaded on that date, but one was unloaded on

October 9. Claimant, therefore, properly amended his claim to show an accident date of October 9, which was only three days prior to the accident date in the original claim.

Although Sohigro produced evidence that claimant was involved in some accidents unrelated to his employment at Sohigro, both before and after his accident at Sohigro, several doctors testified that there was a causal connection between claimant's work accident and his subsequent herniated disc and other injuries. Sohigro did not present any expert testimony showing that claimant's back problems resulted from some other cause in order to rebut the testimony of claimant's experts.

■■ The findings of the Commission will not be overturned unless they are against the manifest weight of the evidence. (*Illinois Valley Irrigation, Inc. v. Industrial Comm'n* (1977), 66 Ill. 2d 234, 239, 362 N.E.2d 339, 342.) "Resolving conflicts in the evidence, drawing inferences from the testimony, and determining the credibility of witnesses and the weight to be given their testimony are matters within the province of the Industrial Commission." (*Berry v. Industrial Comm'n* (1984), 99 Ill. 2d 401, 406, 459 N.E.2d 963, 966.) Both parties presented sufficient evidence to support their respective positions. As the trial court noted: "There was ample evidence to support the [a]rbitrator but the Commission chose to rule differently. In other words, the critical factual issues were in serious dispute but the Commission *** resolved that dispute favorably to [claimant]." Consequently, the Commission's decision was not against the manifest weight of the evidence.

■■ Sohigro's second contention is that it did not receive proper notice of the accident, and the testimony at the hearing concerning notice should not have been admitted because it violated the Dead Man's Act (Ill. Rev. Stat. 1983, ch. 110, par. 8—201 *et seq.*). The parties agree that the only form of notice Sohigro received was verbal notice to Bury, Sohigro's manager. Because of his death, however, Bury did not testify at the hearing. Thus, claimant presented several witnesses—namely, himself, Georgia and Claudette—who testified concerning Bury's knowledge of the accident. Sohigro argues that these witnesses should not have been allowed to testify as to what Bury told them or to what they told Bury because Sohigro could not rebut that testimony due to Bury's death. Sohigro is correct that notice of a work injury must be given to an employer within 45 days of the date of the injury. (Ill. Rev. Stat. 1979, ch. 48, par. 138.6(c); *Ristow v. Industrial Comm'n* (1968), 39 Ill. 2d 410, 413, 235 N.E.2d 617, 618.) Consequently, if the witnesses' testimony regarding statements made

to and by Bury are inadmissible under the Dead Man's Act, then claimant failed to prove Sohigro received notice of the accident and claimant's case falls. Neither Sohigro nor claimant, however, cited any case law to support his position on this issue, and a review of the common law did not reveal any controlling cases.

■■■ Claimant initially argues that Sohigro is estopped from asserting the Dead Man's Act because it put the question of notice in issue. Claimant contends that Sohigro cannot put notice in issue and then block claimant's efforts to prove notice by invoking the Dead Man's Act. Claimant does not cite any authority to support his proposition. In addition, claimant's logic is flawed. Once Sohigro raised the issue of notice, it could properly use all means at its disposal to prove that it did not receive notice. In fact, the Dead Man's Act is used to protect a party such as Sohigro by removing "the temptation of the survivor of a transaction to testify falsely and to equalize the position of the parties in regard to the giving of testimony." *Fleming v. Fleming* (1980), 85 Ill. App. 3d 532, 538, 406 N.E.2d 879, 883.

The Dead Man's Act provides as follows:

"In the trial of any action in which any party sues or defends as the representative of a deceased person or person under a legal disability, no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased or person under legal disability or to any event which took place in the presence of the deceased or person under legal disability ***." Ill. Rev. Stat. 1983, ch. 110, par. 8—201.

"In any action or proceeding by or against any surviving partner or partners, or joint contractor or joint contractors, no adverse party or person adversely interested in the event thereof, shall, by virtue of Section 8—101 of this Act, be rendered a competent witness to testify to any admission or conversation by any deceased partner or joint contractor, unless some one or more of the surviving partners or joint contractors were also present at the time of such admission or conversation; and in every action or proceeding a party to the same who has contracted with an agent of the adverse party—the agent having since died—shall not be a competent witness as to any admission or conversation between himself or herself and such agent, unless such admission or conversation with the deceased agent was had or made in the presence of a surviving agent or agents of such adverse party, and then only except where the conditions are such that under the provisions of Sections 8—

201 and 8—401 of this Act he or she would have been permitted to testify if the deceased person had been a principal and not an agent." (Ill. Rev. Stat. 1983, ch. 110, par. 8—301.) Section 8—201 clearly does not apply because it is used when a "party sues or defends as the representative of a deceased person." (Ill. Rev. Stat. 1983, ch. 110, par. 8—201.) In the case at bar, Sohigro is not defending the suit on behalf of Bury, but rather on its own behalf. The trial court suggested that Bury's statements may be barred by section 8—201. The court stated that if Bury, as a corporate employee, was a member of a corporate control group who could bind the corporation with an admission, then Bury would become the corporation and his death rendered him a deceased person under section 8—201 so that the corporation was in fact defending under section 8—201. The court admitted, however, that it did not know of any case law supporting its theory, and thus held that section 8—201 did not bar Bury's statements.

■ Although section 8—301 more appropriately applies to the case at bar, it still would not require the exclusion of the witnesses' testimony concerning their conversations with Bury. Section 8—301 states that "in every action or proceeding a party to the same who has *contracted* with an agent of the adverse party—the agent having since died—shall not be a competent witness as to any admission or conversation between himself or herself and such agent." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 110, par. 8—301.) Sohigro argues that there was a contract implied in law between claimant and Sohigro—an employment contract which was subject to the Workers' Compensation Act. Although claimant and Sohigro did have an employment contract, neither the terms of that contract nor the terms of the Act were at issue in the suit. Rather, at issue was whether claimant's injury was compensable under the Act. It can hardly be said that claimant contracted with Bury. All claimant did was notify Bury of the accident. Notification is required under the Act but it does not form a contractual relationship.

■ Even if claimant's testimony of his conversation with Bury should have been excluded, Claudette's and Georgia's testimony of Bury's statements were still admissible. Section 8—201 only excludes testimony of an adverse party or a person directly interested in the suit. (Ill. Rev. Stat. 1983, ch. 110, par. 8—201.) If section 8—201 applied, Claudette and Georgia did not have any direct pecuniary interest in the litigation (*Michalski v. Chicago Title & Trust Co.* (1977), 50 Ill. App. 3d 335, 339, 365 N.E.2d 654, 657), although their relationship to claimant may have reduced their credibility. Likewise, section

8—301 only excludes the testimony of a party to the suit. (*Spitzer v. Bradshaw-Praeger & Co.* (1956), 10 Ill. App. 2d 445, 447-48, 135 N.E.2d 114, 115.) Consequently, if sections 8—201 or 8—301 applied and claimant's testimony should have been excluded, Claudette's and Georgia's testimony was still properly admitted, giving the Commission a basis for finding that Bury, and thus Sohigro, had notice of claimant's injury.

■■ ■ The Dead Man's Act does not bar the witnesses' conversations with Bury. Consequently, the witnesses, including claimant, could properly testify to what they told Bury. The witnesses' statements as to what Bury said would be hearsay and thus inadmissible unless an exception to the hearsay rule applies. Where the principal is a party to the suit, the statement of its agent concerning a matter within the scope of the agent's employment, made during the existence of the agency relationship, and expressly or impliedly authorized by the principal is admissible as an admission by the principal as a party-opponent. (*Taylor v. Checker Cab Co.* (1975), 34 Ill. App. 3d 413, 419, 339 N.E. 2d 769, 775.) In the case at bar, Bury's duties involved handling workers' compensation claims. His statements about claimant's accident, therefore, were about a matter within the scope of Bury's employment and they were made while he was employed by Sohigro. Sohigro also could have impliedly authorized Bury to make statements about workers' compensation claims because it gave Bury authority to handle the claims. Even if Bury's statements did not fall within the agency exception to the hearsay rule, his statements were admissible to prove that he had notice of the accident, although they could not have been used to prove the truth of the matter asserted, namely, that claimant's injuries arose from an accident at work. (See *Smith v. Solfest* (1978), 65 Ill. App. 3d 779, 783, 382 N.E.2d 831, 834.) As was noted earlier, the Commission had other sufficient evidence before it to find that claimant's injuries arose out of and during the course of his employment.

For the foregoing reasons, the trial court's confirmation of the Commission's decision is affirmed.

Affirmed.

BARRY, P.J., and McCULLOUGH, McNAMARA, and WOODWARD, JJ., concur.