DONALD COLEMAN, Plaintiff-Appellant, v. CENTRAL ILLINOIS PUBLIC SERVICE COMPANY, Defendant and Third-Party Plaintiff-Appellee (McCartin and McAuliffe Mechanical Contractors, Inc., Third-Party Defendant-Appellee).

Fourth District   No. 4—90—0225

Opinion filed December 20, 1990.

Floyd D. Peterson, Jr., of Law Offices of William W. Schooley, of Granite City, for appellant.

Lee Humphrey, of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, and Della Nelson, of Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., both of Springfield, for appellee Central Illinois Public Service Company.

Robert D. Francis and Edward L. Adelman, both of Dunham, Boman & Leskera, of East St. Louis, for appellee McCartin & McAuliffe Mechanical Contractors, Inc.

JUSTICE GREEN delivered the opinion of the court:

Plaintiff Donald Coleman brought suit against defendant Central Illinois Public Service Company (CIPS) following an accident at its Coffeen, Illinois, power plant. At the time of his accident, plaintiff was employed as an ironworker by third-party defendant McCartin & McAuliffe Mechanical Contractors, Inc. (McCartin & McAuliffe). McCartin & McAuliffe was a subcontractor of CIPS, retained to perform coal silo repairs. Plaintiff alleged that, after being on the repair job at CIPS for five weeks, he was injured when he slipped in a substance (later identified as Nalco), which had leaked from CIPS' barrels onto the floor. Plaintiff alleged CIPS failed to provide a safe place to work.

On August 25, 1989, following a jury trial in the circuit court of Sangamon County, the court entered judgment on the verdict in favor of CIPS and against plaintiff. On appeal, plaintiff maintains (1) the jury's verdict was against the manifest weight of the evidence; and (2) the trial court erred in refusing to allow plaintiff to call Lynn Keep-

per, an employee of CIPS, as a witness. We hold the verdict was supported by the evidence, and the court acted within its discretion in refusing to allow Keepper to testify. We affirm.

The evidence presented at trial contained some conflict on the question of causation. Plaintiff testified (1) prior to injury, he had worked at the site for five weeks; (2) at the time of injury, April 24, 1984, the project had been finished and he and others were removing tools and materials; (3) he was in the process of lifting a tool box which had been lowered to a landing area when he slipped, fell to his knees, and injured his back when he caught the weight of the box; (4) a substance called Nalco had leaked from barrels which were in the area and had accumulated on the grating and concrete where he worked; and (5) he had seen the substance on his feet after he fell. On cross-examination plaintiff admitted (1) he knew the substance was there; (2) he had stepped around the substance on previous occasions; (3) he knew spilled substances could be hazardous; (4) he did not clean the substance up himself nor did he request his foreman or anyone from CIPS clean it up; and (5) he did not notify anyone from CIPS or McCartin & McAuliffe that the substance was there. Plaintiff described the substance on the floor as "thick grease" which was "very bright."

Plaintiff's testimony was corroborated by that of his brother Clyde Coleman, his nephew Kurt F. Coleman, and James L. Kimbro, all of whom testified they were present at the time plaintiff said he slipped and fell. Clyde and Kurt both testified plaintiff slipped and fell to one knee while carrying the tool box. Kimbro stated he did not see whether plaintiff slipped, but the corner of the heavy box which plaintiff was carrying "went down and that's it." Clyde described the substance on the floor as "anti-grease type stuff" which was "oily and base." Kimbro described it as "gooey like ink."

Most of the conflict in the evidence arose from testimony or exhibits purporting to show that plaintiff had made statements in regard to how he became injured which conflicted with his testimony at trial and indicated the presence of a slippery substance on the floor had not been a cause of his injury. Mary Lou Patterson, an employee of McCartin & McAuliffe, testified that plaintiff completed an accident report which indicated he injured his back while lifting a tool box. The report asked "[w]hat hazardous conditions" contributed to the accident, and the response was "none." A deposition of Dr. Roger McFarland, whom plaintiff saw on the day of his accident, indicated the history given by plaintiff indicated "he was lifting a tool box on the morning of the 24th and developed pain in his lumbar spine." Dr.

George Shoedinger, his treating orthopedist, who testified by video-taped evidence deposition, said that plaintiff told him that the accident happened while he was lifting a tool box with another worker. He said the "mechanism" of the injury was that he slipped on a welding rod which had been lying on the floor and twisted his back.

■ Because of the evidence of the conflicting statements of plaintiff, the jury could properly have concluded plaintiff failed to prove his injury arose because the deck was slippery. Thus the jury's verdict was not contrary to the manifest weight of the evidence.

On August 21, 1989, the first day of trial, CIPS presented a list of witnesses it planned to call during trial, including its employee, Lynn Keepper. Plaintiff's counsel was informed during an in-chambers conference held immediately prior to trial that Keepper was a chemist who would not be asked to render any expert opinions but would testify as to what chemical was contained in the barrels located near where plaintiff was injured. Plaintiff objected to CIPS' use of Keepper at trial, because he had not been disclosed as a witness. CIPS noted that plaintiff had not filed supplemental discovery requests since 1986, and that Keepper's identity was learned only three weeks prior to trial. The trial court indicated it would allow Keepper to testify and allowed plaintiff to interview him prior to trial. The interview was not recorded.

On the third day of trial, following plaintiff's interview of Keepper, plaintiff served notice to CIPS to produce Keepper as a witness pursuant to Supreme Court Rule 237 (107 Ill. 2d R. 237). CIPS objected, indicating plaintiff intended to call Keepper as an expert witness, who had not previously been disclosed pursuant to Supreme Court Rule 220 (107 Ill. 2d R. 220). CIPS noted it had intended to call Keepper only to lay a foundation for the introduction of a sample of the Nalco substance into evidence. Plaintiff then suggested that if CIPS did not intend to introduce a sample of the substance into evidence, he would have no reason to call Keepper in rebuttal. CIPS agreed not to call Keepper as a witness and agreed not to introduce into evidence a sample of the substance.

CIPS then recalled, without objection, its employee Barry Webster. Webster testified he had recently viewed the substance in these barrels and believed it to be the same substance contained in the barrels at the time of plaintiff's accident. He described the substance as (1) a dark red liquid; (2) looking more like water than heavy antifreeze; and (3) which was not "globby" or "clumpy." He said that when the water evaporates, it does not leave a residue. This testimony was contrary to plaintiff's occurrence witnesses, including plain-

tiff, who had described the consistency of the substance variously as "thick grease," "anti-grease type stuff" which was "oily and base," and "gooey like ink."

Following Webster's testimony, and CIPS resting, plaintiff again requested to call Keepper as a rebuttal witness. CIPS objected, maintaining that the calling of Keepper was untimely because plaintiff had presented evidence of the degree of slipperiness of the Nalco on the floor of the deck in its case in chief, and defendant had responded with evidence on that subject. CIPS then contended that Keepper had not been disclosed to CIPS as required by Supreme Court Rule 220. As an offer of proof, plaintiff's counsel indicated, if called to testify, Keepper would state:

> "[T]his is a water base stuff; it has two pounds of a solid substance which remains after the water evaporates if it spills. He did say it leaks—that it goes through stages just like water and dirt, through like slop, slush, mud, and it is slick."

The court denied the plaintiff's request to call Keepper without comment as to its reason for ruling.

CIPS maintains the exclusion of Keepper's testimony was proper because (1) no proper offer of proof was made; (2) the testimony would not have been rebuttal but a corroboration of plaintiff's evidence in chief; and (3) the testimony was inadmissible under Supreme Court Rule 220. Plaintiff asserts the offer was sufficient, the testimony rebutted that of Webster, and Rule 220 was not applicable. Plaintiff also contends Keepper's testimony was admissible as "an admission against interest."

■ We answer plaintiff's last contention first. The phrase "admission against interest" is often used in a manner to include the admission by a party opponent exception to the hearsay rule. Plaintiff points out that statements by certain agents of a party, made in the course of the agent's employment, may be introduced into evidence against the principal. (*Sohigro Service Co. v. Industrial Comm'n* (1988), 172 Ill. App. 3d 47, 526 N.E.2d 683; *Donart v. Board of Governors, Western Illinois University* (1976), 39 Ill. App. 3d 484, 349 N.E.2d 486.) However, plaintiff never offered to introduce into evidence any past statement of Keepper. Plaintiff requested leave to call Keepper as a witness. The issue of the admissibility of past statements by Keepper was never raised.

■ While the best method of making an offer of proof is to actually ask the proposed question to the witness on the witness stand and out of the presence of any jury involved, the offer made here was adequate to preserve the ruling for appeal. The substance of the ex-

pected answer of the witness was made clear. *Belfield v. Coop* (1956), 8 Ill. 2d 293, 134 N.E.2d 249; M. Graham, Cleary & Graham's Handbook of Illinois Evidence §103.7, at 21 (5th ed. 1990).

■■ We agree with CIPS the circuit court could properly deny plaintiff's tender of Keepper as a rebuttal witness. Plaintiff's witnesses in his case in chief had given their opinion of the slippery nature of the substance on the floor of the deck. This was countered by Webster. Keepper's testimony would merely corroborate that of the plaintiff's earlier witnesses. The admission of such testimony in rebuttal is within the sound discretion of the trial court. (*People v. Daugherty* (1969), 43 Ill. 2d 251, 253 N.E.2d 389; M. Graham, Cleary & Graham's Handbook of Illinois Evidence §611.3, at 400 (5th ed. 1990).) That discretion was not abused here. No error resulted from the exclusion of the testimony.

We need not pass upon the issue concerning Supreme Court Rule 220 as applied to the offer of Keepper's testimony in order to affirm. However, we conclude we should address this interesting question so that the case need not be remanded to us to decide the issue if our reason for affirming is rejected on appeal. That rule requires pretrial disclosure by a party seeking to call an expert witness:

"[W]ho, because of education, training or experience, possesses knowledge of a specialized nature beyond that of the average person on a factual matter material to a claim or defense in pending litigation and who may be expected to render an opinion within his expertise at trial. He may be an employee of a party, a party, or an independent contractor." (107 Ill. 2d R. 220(a)(1).)

The rule indicates that "[i]n order to insure fair and equitable preparation for trial by all parties" the parties are required to act in good faith in disclosing the identity of an expert "who is retained to render an opinion at trial" and to allow the substance of his opinion to be discovered. (107 Ill. 2d R. 220(b).) The failure to make the disclosure as required by Rule 220 "will result in disqualification of the expert as a witness." 107 Ill. 2d R. 220(b).

In the consolidated cases of *Tzystuck v. Chicago Transit Authority* (1988), 124 Ill. 2d 226, 529 N.E.2d 525, the supreme court stated that Rule 220 does not require the disclosure of a treating physician as an expert witness. The court noted the rule which is substantially similar to its Federal counterpart, Federal Rule 26(b)(4), does not apply to " 'the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject

matter of the lawsuit.' " *Tzystuck*, 124 Ill. 2d at 235, 529 N.E.2d at 529, quoting Fed. R. Civ. P. 26(b)(4)(A)(i).

This court subsequently held that an engineer, employed by defendant, was not required to be disclosed under Supreme Court Rule 220(b)(1), where that employee was "intimately involved in the subject matter of the litigation." (*Smith v. Central Illinois Public Service Co.* (1988), 176 Ill. App. 3d 482, 495, 531 N.E.2d 51, 59.) This court noted that plaintiff had previously taken the witness' deposition, and his status as an expert was fully disclosed then. In addition, the deposition made clear that the witness' role was as project manager for the power plant when the plaintiff was injured. This court indicated the fact that an employee of a party, who was also an occurrence witness and intimately involved in the subject of litigation, would testify was not a surprise to the plaintiff. Rather, the only surprise was that he gave an expert opinion.

Under the circumstances shown here, plaintiff maintains Keepper was not a witness "retained" by him to render an opinion at trial, as required by Rule 220. Plaintiff notes he did not hire Keepper and would not have paid him for his testimony. He claims Keepper was more similar to a treating physician, whose disclosure was found in *Tzystuck* not to be required under Rule 220. Plaintiff argues that Keepper's opinions as to the consistency and properties of Nalco were not developed in anticipation of litigation but as a result of his experience as a chemist.

CIPS points out that Keepper does fit the portion of the description in Supreme Court Rule 220 of an "expert witness" as "a person who, because of education, training or experience, possesses knowledge of a specialized nature beyond that of the average person on a factual matter material to a claim or defense in pending litigation." (107 Ill. 2d R. 220.) He does not fit the definition of an occurrence witness as set forth in *Tzystuck*. Although he did not acquire his opinions in anticipation of litigation, neither did he acquire them by observation of the accident or, as far as the record shows, by personal observation of the substance itself. Nor is this witness like that in this court's opinion of *Smith*. Keepper was not an employee "intimately involved in the subject matter of the litigation." (*Smith*, 176 Ill. App. 3d at 495, 531 N.E.2d at 59.) In *Smith*, the witness had designed the project and was allowed to testify concerning the safety of the design. There is no evidence here of Keepper's involvement with this chemical substance except as far as his expertise as a chemist.

■ Nevertheless, the purpose of Supreme Court Rule 220 is to require advance disclosure of an expert in order to allow opposing

counsel to prepare for the case with particular reference to countering the testimony of the expert. Here, as in *Smith*, the fact that Keepper was called as a witness was no surprise to the opposing party, CIPS. It had intended to call him. The only surprise was that he was asked to give an expert opinion as to the possible slipperiness of Nalco, the product CIPS was going to have him identify. Plaintiff points out that CIPS most likely knew what Keepper's opinion was in regard to the slipperiness of Nalco. We agree.

■ This case differs from *Meyer v. Caterpillar Tractor Co.* (1988), 179 Ill. App. 3d 268, 533 N.E.2d 386, *rev'd on other grounds* (1990), 135 Ill. 2d 1, 552 N.E.2d 719. There, the appellate court held the circuit court erred in allowing a party to call, as expert witnesses, employees of the opponent without compliance with Rule 220. Unlike here, the record there did not show the opponent had intended to call those same employees on a subject very closely related to that for which they were called to testify. We recognize the circuit court here could reasonably have concluded Rule 220 required it to prohibit Keepper from testifying for plaintiff. However, we conclude the unusual circumstances here create an additional exception to the notice requirements of Supreme Court Rule 220. Fairness requires that under the very unusual situation here, notice pursuant to Rule 220 should not be a condition precedent to calling a witness such as Keepper.

However, as we have indicated, the fact Keepper's testimony was offered in rebuttal and for the purpose of merely corroborating plaintiff's evidence in chief justified the circuit court's refusal to hear the evidence.

The judgment on appeal is affirmed.

Affirmed.

STEIGMANN and KNECHT, JJ., concur.