DOLORES JONES, CHARLENE FLOWERS, CHARLOTTE JONES AND CLINTON JONES, APPELLANTS, v. VIKING FREIGHT SYSTEM, INC., RESPONDENT.

No. 15835

June 20, 1985

701 P.2d 745

*Bradley & Drendel,* Reno, for Appellants.

*Erickson, Thorpe, Swainston & Cobb, Ltd.* and *Lawrence D. Wishart,* Reno, for Respondent.

## OPINION

*Per Curiam:*

This appeal is from a jury verdict in favor of the defendant, Viking Freight System, Inc., in a wrongful death action brought by the surviors of the decedent, Lawrence Jones.

The accident which brought these parties to trial occurred on January 25, 1983, on U.S. 395 just south of Gardnerville. At the point of the accident, the road consists of two driving lanes, a turn lane, and wide shoulders. In this particular stretch of highway the speed zone changes from 35 mph to 45 mph and then to 55 mph within a fairly short distance. The Jones car was traveling at approximately 35 to 45 mph. The Viking truck had entered the

turn lane in order to pass an automobile following the Jones car, and continued to pass the Jones car while in the turn lane. Because the road was narrowing, the Viking truck pulled into the driving lane in an attempt to pass the Jones car, thereby abruptly "cutting off" the Jones car and forcing it onto the shoulder.

Eyewitness testimony indicated that Mr. Jones did not lose control of his vehicle. He did not apply his brakes or slow down, but rather accelerated to a speed in excess of that of the Viking truck in an attempt to pass the Viking truck on the right while continuing to drive on the shoulder of the road. Apparently, there was nothing which would have prevented Jones from stopping or slowing down.

The Jones vehicle traveled approximately 1,150 feet on the shoulder at an estimated speed of 65 mph in an effort to pass the Viking truck and knocked down three road markers. Jones eventually passed the Viking truck on the right and cut in front of the Viking truck to reenter the driving lane. At that point, contact between the two vehicles was made, and the Jones car spun across the highway. It was demolished by an oncoming logging truck unable to avoid hitting it. Mr. Jones did not survive the collision·with the logging truck.

At trial appellants' counsel proposed a jury instruction dealing with the sudden emergency doctrine. After receiving points and authorities concerning the use of this instruction, and listening to argument by counsel, the district court refused to give the instruction under the facts of this case.

Appellants first contend that the district court erred by refusing to give a sudden peril instruction to the jury. We disagree. A party is entitled to have the jury instructed on all of his theories of the case that are supported by the evidence. American Cas. Co. v. Propane Sales & Serv., 89 Nev. 398, 513 P.2d 1226 (1973). The district court should not, however, give an instruction unless it is supported by the evidence. Village Development Co. v. Filice, 90 Nev. 305, 526 P.2d 83 (1974). Refused Jury Instruction No. 1[1] is predicated by its own terms on an absence of liability by the plaintiff in bringing about the sudden emergency. Our review of the record persuades us that the perilous circumstances resulting in Jones' death did not arise in a sudden manner,

---

[1]Plaintiff's Refused Jury Instruction Number 1:

Where one without fault of his own is placed in a position of great mental stress or sudden emergency, the same degree of judgment and care is not required of him as is required of one who is acting under normal conditions. The test to be applied is whether or not the person in such a position of great mental stress or sudden emergency did or attempted to do what a reasonably careful person would have done under the same or similar circumstances.

but arose as a natural consequence of his own manifestly inappropriate volitional acts. Because the facts did not support appellants' theory of sudden peril, the district court did not err in refusing to give this instruction to the jury.

■■■

Relying on Scott v. Smith, 73 Nev. 158, 311 P.2d 731 (1957), and Armstrong v. Onufrock, 75 Nev. 342, 341 P.2d 105 (1959), appellants also contend that the district court should not have taxed as costs the depositions not used at trial. We disagree. NRS 18.005,[2] adopted after our decisions in the above cited cases, defines "costs" as reporters' fees for depositions, including a reporter's fee for one copy of each deposition. To the extent that the statute does not require that the deposition be utilized at trial to be a taxable cost, appellants' contention is without merit.

We have reviewed appellants' remaining contentions and have concluded that they are without merit. Accordingly, we affirm the judgment of the district court in all respects.

—————
[2]NRS 18.005 states, in pertinent part:
    For the purposes of NRS 18.010 to 18.150, inclusive, the term "cost" means:
    1.  Clerks' fees.
    2.  Reporters' fees for depositions, including a reporter's fee for one copy of each deposition.