CARL MARSHALL, Adm'r of the Estate of Barry S. Marshall, Deceased, *et al.*, Plaintiffs-Appellants, v. ELDAN A. OSBORN, Defendant-Appellee.

Third District   No. 3—90—0024

Opinion filed April 25, 1991.

Gomien, Root & Rigazio, of Morris (Mark W. Rigazio, of counsel), for appellants.

James D. Grumley and Pamela E. Davis, both of Rooks, Pitts & Poust, of Joliet, for appellee.

JUSTICE SLATER delivered the opinion of the court:

On April 17, 1987, plaintiffs' decedent Barry S. Marshall was killed when he was struck by an automobile driven by defendant Eldan A. Osborn. Plaintiffs filed suit pursuant to the Wrongful Death Act (Ill. Rev. Stat. 1987, ch. 70, pars. 1, 2) alleging various acts of negligence. Following a number of pretrial motions, which will be explained in more detail below, trial began on September 20, 1989. The evidence presented at trial was limited by application of the Dead Man's Act ( Ill. Rev. Stat. 1987, ch. 110, par. 8—201), which prevented presentation of any event which took place in the decedent's presence.

The evidence presented at trial showed that the defendant was driving east along Lorenzo Road at approximately 2 a.m. The weather was foggy and the accident occurred in a rural area in which there were no streetlights, sidewalks, crosswalks, businesses, or intersections. The posted speed limit was 55 miles per hour.

Police officers who investigated the accident testified to the damage sustained by the defendant's car. The hood of the car on the driver's side was dented and the fender on that side was heavily damaged and had been pushed back to the edge of the driver's door. On the passenger side, the amber turn signal light was broken and there was a large dent where the roof of the car meets the windshield. The windshield on the passenger side was shattered inward, creating a large hole. Hairs were found in the windshield, on the chrome trim at the top of the windshield, and on the louvered rear windows.

The body of the decedent was found in the eastbound traffic lane of Lorenzo Road. All blood and body tissue were also found in the eastbound lane. Two pieces of fiberglass debris from defendant's vehicle were found in the eastbound lane close to the center line. Amber glass shards were also found in the roadway east of the fiberglass debris. The decedent's body was east of both areas of debris. No blood, body tissue, or debris was found in the westbound lane or on either the north or south shoulders of the road.

A car was found in a ditch on the south shoulder of the road facing west with its headlights on. The car was undamaged except for a

cracked windshield which was not related to this incident. The car belonged to the decedent's father and was driven by the decedent that night.

Pursuant to a request to admit facts, the defendant admitted that her car struck the decedent and caused his death. Defendant also admitted that at or about the time of the collision between her and the decedent, defendant's car left the roadway approximately two feet.

Doctor Austin Gibbons, a pathologist, testified as an expert witness for defendant. Gibbons testified that the blood-alcohol level of the decedent was .320, which the witness characterized as "severely intoxicated." According to Gibbons, a person at this level of intoxication would be extremely uncoordinated, staggering, and barely able to walk. In addition, such a person's ability to perceive would be extremely impaired and his judgment would be greatly affected.

The jury returned a verdict in favor of the defendant. Plaintiffs' post-trial motion was denied, and they raise the following issues on appeal: (1) whether the trial court erred in reversing a prior ruling on a motion *in limine*, thereby allowing defendant to present evidence of decedent's intoxication; (2) whether the court should have barred the testimony of defendant's expert witness; (3) whether the trial court properly excluded evidence of defendant's consumption of alcohol; and (4) whether the trial court erred in refusing to allow plaintiffs' expert to testify to the speed of defendant's vehicle. We affirm.

Plaintiffs first contend that the trial court improperly changed a ruling which had excluded any evidence of the decedent's intoxication. Plaintiffs filed a motion *in limine* on April 18, 1988, prior to the completion of discovery and before a trial date had been set, which sought to exclude any evidence of decedent's intoxication on the grounds that its prejudicial effect outweighed its probative value and that such evidence was irrelevant because there was nothing to indicate that intoxication contributed to the decedent's death. In arguing the motion, plaintiffs' counsel relied on the fact that no one, including defendant, had seen the decedent prior to the accident and thus there was "no evidence whatsoever of his position; meaning where he was standing, if he was standing, whether he was walking, moving, [or] what he was doing at the time of the collision."

The court granted plaintiffs' motion on June 22, 1988, prohibiting the defendant from making any reference to the decedent's intoxication or consumption of alcohol. The judge who granted the motion was not the same judge who presided at the trial of this cause. The defendant's motion to reconsider was denied on November 10, 1988.

Prior to selection of the jury on September 20, 1989, defendant made a motion to reconsider the ruling on the motion *in limine*. The trial judge refused to reconsider the ruling at that time, but he cautioned plaintiffs' attorney that he would not be bound by the ruling of the previous judge if the evidence presented at trial warranted admission of decedent's intoxication. After jury selection and prior to opening statements, plaintiffs' attorney indicated that it would be unfair to reconsider the ruling on the motion *in limine* at such a late date. The trial judge then asked plaintiffs' attorney if he would like him to rule on the motion to reconsider at that time, and plaintiffs' attorney said he did not. The judge then again warned plaintiffs' counsel that if the evidence presented at trial indicated that the decedent's intoxication was relevant he would admit it, and the judge again asked plaintiffs' counsel if he would rather have a ruling at that time. Plaintiffs' attorney responded that he did not want a ruling at that time.

After plaintiffs presented their case the defendant again asked the court to reconsider the motion *in limine*. The court reversed the earlier ruling, finding that evidence of decedent's intoxication was material and relevant because all the evidence indicated that the decedent was in the eastbound traffic lane when he was struck by the defendant's car. The judge told plaintiffs' attorney that he would allow him to reopen his case to submit further evidence and that he would give plaintiffs' counsel the weekend to consider it. Plaintiffs chose not to reopen their case.

Plaintiffs first contend that the trial court abused its discretion in reversing the ruling on the motion *in limine* after trial had begun because plaintiffs had relied on the earlier ruling in pretrial discovery and in preparing their case for trial. We disagree.

■■ ■ A ruling on a motion *in limine* is interlocutory in nature and is subject to reconsideration throughout trial as the evidence is fully developed (*Ely v. National Super Markets, Inc.* (1986), 149 Ill. App. 3d 752, 500 N.E.2d 120; *Beasley v. Huffman Manufacturing Co.* (1981), 97 Ill. App. 3d 1, 422 N.E.2d 241; see *Towns v. Yellow Cab Co.* (1978), 73 Ill. 2d 113, 382 N.E.2d 1217 (court is not bound by interlocutory orders of previous judge and has the power to correct erroneous orders)). In this case the initial ruling which barred evidence of intoxication was largely based on representations by plaintiffs' attorney that there was no evidence of decedent's location at the time of impact. The evidence presented at trial strongly implied, however, that the decedent was in defendant's traffic lane when he was struck. Plaintiffs may not now complain that they were misled by a ruling which they induced the court to make. (See *Crossman v. Curless*

(1988), 178 Ill. App. 3d 97, 532 N.E.2d 1110.) Moreover, the trial court made a conscientious effort to minimize any surprise or potential prejudice by offering to rule before plaintiffs presented their case and by offering them the opportunity to reopen their case after the ruling. We find no abuse of discretion.

Plaintiffs further contend that the trial court erred in admitting evidence of decedent's intoxication because it was irrelevant and because its prejudicial effect outweighed its probative value. Plaintiffs argue that there must be a causal connection between decedent's intoxication and some conduct which contributed to his death.

Evidence of a plaintiff's intoxication is relevant to the extent that it affects the care that he takes for his own safety and is therefore admissible as a circumstance to be weighed by the trier of fact in its determination of the issue of due care. (*Doria v. Costello* (1974), 22 Ill. App. 3d 505, 318 N.E.2d 40; *Patarozzi v. Prairie States Oil & Grease Co.* (1966), 71 Ill. App. 2d 155, 218 N.E.2d 113.) Our supreme court explained the probative value of such evidence long ago:

"A person who voluntarily uses intoxicating drinks until he has become physically helpless, or his powers so far impaired that he is unable to exert the necessary effort to avoid danger, is guilty of negligence when he places himself in a position of danger; and so when he thus stupifies and deadens his intellectual powers, so that he is unable to foresee and guard against danger. It was, then, highly important for the jury to be possessed of all the facts tending to show his mental and physical condition. Otherwise their conclusions as to whether he exercised reasonable care, might be altogether erroneous." *Illinois Central R.R. Co. v. Cragin* (1873), 71 Ill. 177, 181-82.

While evidence of intoxication is highly probative, it is also extremely prejudicial; therefore, more is required than evidence of alcohol consumption alone. (*Sandburg-Schiller v. Rosello* (1983), 119 Ill. App. 3d 318, 456 N.E.2d 192.) It must be shown that the intoxication resulted in an impairment of mental or physical abilities and a corresponding diminution in the ability to act with ordinary care. (*Shore v. Turman* (1965), 63 Ill. App. 2d 315, 210 N.E.2d 232.) The evidence must show "either directly or by reasonable inference, that the conduct of the individual at and before the accident was or may have been affected by the use of alcoholic beverages" (*Shore*, 63 Ill. App. 2d at 323, 210 N.E.2d at 236).

In this case the evidence shows that at the time decedent was struck by defendant's car he was located on an unlighted roadway with a posted speed limit of 55 miles per hour in a rural area on a

dark and foggy night. Defendant's expert witness testified that the level of alcohol in decedent's blood would have a profound effect on his perception, judgment, and physical abilities. Under the circumstances, we find that the trial court did not err in admitting evidence of decedent's intoxication. See *Cuellar v. Hout* (1988), 168 Ill. App. 3d 416, 522 N.E.2d 322 (evidence of alcohol consumption supported by opinion testimony of intoxication was admissible).

Plaintiffs next contend that the trial court erred in allowing defendant's expert witness to testify because defendant had not disclosed the witness pursuant to Supreme Court Rule 220 (134 Ill. 2d R. 220). Following the trial court's reversal of the earlier ruling barring evidence of decedent's intoxication, plaintiffs moved to bar the testimony of defendant's expert, Doctor Gibbons, because he had not been disclosed. The trial court denied the motion, finding that any surprise to plaintiffs was minimized by the fact that Doctor Gibbons' affidavit, setting forth his qualifications and opinions, was attached to defendant's response to plaintiffs' motion for summary judgment which was filed on November 9, 1988. The trial court also noted that the defendant was in a "Catch-22" situation, apparently referring to the fact that the ruling barring evidence of intoxication was entered before disclosure of experts was required under Rule 220 and remained in effect until trial. The trial judge gave plaintiffs' attorney the opportunity to depose defendant's expert over the weekend but counsel declined.

The imposition of sanctions for a violation of Supreme Court Rule 220 lies within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. (See *Dietrich v. Jones* (1988), 172 Ill. App. 3d 201, 526 N.E.2d 450.) Disqualification of an undisclosed expert is not the only sanction available to the court, and under some circumstances, allowing the offended party the opportunity to depose the expert may be an appropriate response. See *Kosinski v. Inland Steel Co.* (1989), 192 Ill. App. 3d 1017, 549 N.E.2d 784.

In this case there was no question that defendant failed to disclose her expert witness. The affidavit attached to defendant's response to plaintiffs' motion for summary judgment is not a sufficient substitute for the disclosure required by Rule 220. (*Cf. Scheibel v. Groeteka* (1989), 183 Ill. App. 3d 120, 538 N.E.2d 1236.) We believe that ordinarily such a clear violation of Rule 220 would mandate disqualification of the witness. Under the unusual circumstances presented here, however, where the defendant had been barred from raising the subject matter of the expert's testimony *before* disclosure

was required, we find no abuse of discretion by the trial court in allowing the witness to testify (see *Coleman v. Central Illinois Public Service Co.* (1990), 207 Ill. App. 3d 96, 565 N.E.2d 274 (in unusual circumstances, fairness may require exception to disclosure requirements of Rule 220)). Furthermore, we note that Rule 220 requires disclosure "[w]here the testimony of experts is *reasonably contemplated*" (emphasis added) (134 Ill. 2d .R. 220(b)(1)). Given the pretrial ruling barring evidence of intoxication, we believe that it was reasonable for defendant to assume her expert would not be allowed to testify and therefore his testimony was not "reasonably contemplated." We caution counsel in future cases, however, that the better practice is to disclose all *potential* expert witnesses since the decision to bar an undisclosed witness rests with the trial judge.

Plaintiffs next maintain that the trial court erred in refusing to allow plaintiffs to present evidence of defendant's consumption of alcohol. Specifically, plaintiffs sought to question defendant's expert, Doctor Gibbons, regarding the effect on defendant of drinking four beers in a five-hour period. Defendant had admitted drinking four beers on the night of the accident in answer to plaintiffs' interrogatories.

While evidence of intoxication affecting the physical or mental abilities of a party is generally admissible, mere consumption of alcohol is not unless it is supported by evidence of intoxication. (*Wagner v. Zboncak* (1982), 111 Ill. App. 3d 268, 443 N.E.2d 1085; *Clay v. McCarthy* (1979), 73 Ill. App. 3d 462, 392 N.E.2d 693; *McCullough v. McTavish* (1978), 62 Ill. App. 3d 1041, 379 N.E.2d 890; *Ballard v. Jones* (1974), 21 Ill. App. 3d 496, 316 N.E.2d 281.) While cross-examining Doctor Gibbons, plaintiffs' attorney posed a hypothetical question in which Gibbons was asked to determine the blood-alcohol level of a person of defendant's weight who consumed four beers over a five-hour period. Gibbons initially refused to answer, stating that due to differences in absorption and elimination rates and other factors it was "an impossible thing to predict with any degree of scientific accuracy." After continued questioning, the following colloquy occurred:

"A. [Doctor Gibbons]: Well, *** the worst case put [her] at .115 if you were to take it all and inject it into that person at that time. Now, if you take instead and spread the absorption and the elimination over 5 hours, that person is never going to reach .115. It would be significantly lower than that.

Q. [Plaintiffs' attorney]: What would it be?

A. I am guessing—half of that.

Q. Okay. Good. What would it be?

A. I have no idea.

Q. Half of that is?

A. .057 or less."

After the witness was excused, plaintiffs' attorney sought to subpoena Doctor Gibbons to have him testify to the blood-alcohol level of the defendant. Plaintiffs' attorney made an offer of proof by questioning Doctor Gibbons outside the presence of the jury, a portion of which is related below:

"Q. Doctor, I asked you earlier, and gave you a certain scenario ***.

You testified, I believe, that under those conditions and consuming that alcohol at that rate that that person would have a worse [sic] case scenario of a .115, and a best case scenario of .057.

A. No. I didn't say a best case scenario was .057. I said half or less when you asked me what it would be like. You are dealing with an extremely hypothetical case where it could have been zero at that time.

Q. Do you have an opinion within your expertise as to what her blood alcohol level was at 2:00 a.m., the time of the collision, given the facts that I have given you concerning alcohol consumption and body weight?

A. There is no scientifically or forensically valid way which I can get that, other than by pure guess. There is no sound way. My opinion is I can't testify to that with any degree of scientific certainty. It is impossible to tell you that."

Further questioning produced additional responses from Doctor Gibbons, the substance of which was that any estimate of the defendant's blood-alcohol level would be a guess lacking any degree of scientific certainty. The trial court refused to allow plaintiffs to introduce evidence of defendant's consumption of alcohol.

■ In view of the lack of any supporting evidence of intoxication, the trial court properly excluded evidence of defendant's alcohol consumption (see *Wagner,* 111 Ill. App. 3d 268, 443 N.E.2d 1085; *McCullough,* 62 Ill. App. 3d 1041, 379 N.E.2d 890). It is clear that Doctor Gibbons' testimony that defendant's alcohol level may have been .057 was mere speculation. An expert's opinion cannot be based on conjecture or guess (*Dyback v. Weber* (1986), 114 Ill. 2d 232, 500 N.E.2d 8), and a medical expert's opinion must be based on a reasonable degree of medical certainty (*Collins v. Straka* (1987), 164 Ill. App. 3d 355, 517 N.E.2d 1147). We find no error.

Finally, plaintiffs contend that the trial court erred in refusing to allow their expert witness to testify that defendant's car was traveling 40 to 45 miles per hour at the time of impact. In answer to interrogatories submitted by defendant, plaintiffs stated that their expert, Eldan Lane, would testify that the defendant's car "was traveling at a much greater rate of speed than 10-15 mph" at the time of collision. The day before trial, plaintiffs' counsel informed defense counsel that Lane's specific opinion was that defendant was traveling between 40 and 45 miles per hour. Plaintiffs' attorney said that he had learned of this opinion on the previous day. Defendant filed a motion to limit Lane's testimony to that which had been disclosed in the interrogatories. The trial court granted defendant's motion, finding that allowing the undisclosed opinion would violate Rule 220.

Defendant also moved to bar any testimony by Lane on the basis that he was unqualified as an expert. Outside the presence of the jury, Lane testified regarding his qualifications to render an opinion on the speed of defendant's vehicle based on damage to the car. Lane's occupation at the time of trial was fabricating metal frames for storefront awnings. He had 35 years experience in body and fender work, including repairing damage from all types of collisions. He also stated that he was familiar with the type of car owned by the defendant, had repaired similar cars, and he was familiar with the strength of the metal used in the car. Lane also stated that he was not a high school graduate and he had no formal training in physics or engineering. The court found that Lane was "qualified as an expert on this question alone, *** [he] can only answer to the extent of [his] answer to the interrogatory." Plaintiffs did not call Lane as a witness.

Plaintiffs argue that Lane's opinion regarding the speed of defendant's vehicle should have been admitted because it did not represent "an undisclosed shift in theory or belief" (134 Ill. 2d R. 220(c), Committee Comments, at 181; see *Singh v. Air Illinois, Inc.* (1988), 165 Ill. App. 3d 923, 520 N.E.2d 852). We agree that the undisclosed opinion did not represent a shift in theory. Plaintiffs' argument ignores, however, Rule 220(d), which provides:

> "To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings through interrogatories, depositions or requests to produce, his direct testimony at trial may not be inconsistent with or go beyond the fair scope of the facts known or opinions disclosed in such discovery proceedings. However, he shall not be prevented from testifying as to facts or opinions on matters regarding

which inquiry was not made in the discovery proceedings." 134 Ill. 2d R. 220(d).

■■ The purpose of Rule 220 is to allow litigants to ascertain and rely upon the opinions of experts retained by their adversaries (134 Ill. 2d R. 220(d), Committee Comments, at 182), and paragraph (d) limits the scope of an expert's testimony to those opinions revealed in response to discovery (*Bart v. Union Oil Co.* (1989), 185 Ill. App. 3d 64, 540 N.E.2d 770). Plaintiffs maintain, however, that it was defendant's failure to depose the witness which resulted in the nondisclosure of the expert's additional opinion. It is clear, however, that Rule 220 "imposes upon the party retaining an expert witness the obligation to keep abreast of the opinions which may be expressed at trial" and "[c]ourts should not view favorably the late disclosure of 'new' opinions" (134 Ill. 2d R. 220(c), Committee Comments, at 181).

■■ The question then is whether Lane's opinion that defendant was traveling 40 to 45 miles per hour was beyond the fair scope of his earlier disclosed opinion that defendant was traveling at a much greater rate of speed than 10 to 15 miles per hour. While there is no question that the former opinion is *consistent* with the latter, it is decidedly more specific, and the implications of such an opinion may be profoundly different from the more general and rather innocuous opinion expressed in the interrogatory. We believe, therefore, that the trial court did not err in finding that the tardily disclosed opinion was beyond the scope of the answer given to the interrogatory, and we find no abuse of discretion by the court in limiting the expert's opinion. See *Stringham v. United Parcel Service, Inc.* (1989), 181 Ill. App. 3d 312, 536 N.E.2d 1292.

■■ In addition, we find that the trial court did not err in finding that plaintiffs' expert was qualified to testify only to his opinion that defendant was travelling in excess of 10 to 15 mile per hour. The determination of an expert's qualifications is within the discretion of the trial court. (*Bloomgren v. Fire Insurance Exchange* (1987), 162 Ill. App. 3d 594, 517 N.E.2d 290.) While Lane had extensive experience in repairing damaged vehicles, he had no training or education in physics, engineering, or any other scientific discipline which would enable him to make a reasonably precise determination of the speed of defendant's car (see *Deaver v. Hickox* (1967), 81 Ill. App. 2d 79, 224 N.E.2d 468 (expert opinion as to speed of vehicles usually requires scientific knowledge)).

■■ Finally, we believe that even if the trial court had erred in excluding Lane's opinion of the speed of defendant's car, the result of the trial would not have been different had such testimony been pre-

sented. The posted speed limit on Lorezo Road was 55 miles per hour. While there was dense fog on the night of the collision, a police officer testified that he drove 45 miles per hour in the foggy conditions on his way to the scene of the accident and after leaving the scene. Under the circumstances, we deem it unlikely that the jury would have found for plaintiffs even if they believed that defendant was traveling 40 to 45 miles per hour.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

GORMAN and McCUSKEY, JJ., concur.