ALBERT BOUMENOT, Plaintiff-Appellee and Appellant, v. NORTH COM-MUNITY BANK *et al.*, Defendants-Appellees (Edward Kane, Defendant-Appellant and Appellee).

First District (6th Division)   Nos. 1—90—2511, 1—90—2837 cons.

Opinion filed December 27, 1991.—Modified on denial of rehearing April 10, 1992.

Heldrich, Gutman & Associates, of Chicago (Gerard C. Heldrich, Jr., of counsel), for appellant.

Wesolowski & Karcazes, Ltd., Harold I. Levine, Ltd., and James P. Wognum, all of Chicago, for appellees.

JUSTICE RAKOWSKI delivered the opinion of the court:

The plaintiff Albert Boumenot initially brought an action to enjoin North Community Bank from selling his beneficial interest in a land trust. Plaintiff also alternatively sought subrogation from Edward Kane. Following a bench trial, the trial court entered a judgment confirming the sale of plaintiff's beneficial interest in the land trust and granting plaintiff a right of subrogation against Edward Kane. Plaintiff appealed the judgment in favor of North Community Bank, and

Edward Kane appealed the trial court's finding that plaintiff could recover from him by way of subrogation. The two appeals were subsequently consolidated. The issues on appeal are: (1) whether the trial court erred in finding that North Community Bank held a valid security interest in trust No. 5335; (2) whether the plaintiff has a right of subrogation against Edward Kane; and (3) whether the trial court erred in failing to award Albert Boumenot a homestead exemption regarding his beneficial interest in trust No. 5335.

The property which is central to this consolidated appeal is located at 1320 N. Hoyne Avenue in Chicago, Illinois. The title to the property is held in a land trust by Lake View Trust and Savings Bank (Lake View) and is identified as trust No. 5335. The entire beneficial interest in the property was initially owned by John Boumenot, but on July 2, 1979, John Boumenot assigned 50% of the beneficial interest in the property to his brother, Albert Boumenot, as a tenant in common. The assignment of the beneficial interest was acknowledged by Lake View. On July 25, 1979, John and Albert Boumenot pledged their beneficial interest in trust No. 5335 to North Community Bank (NCB) as security for a loan of $90,000. A note and security agreement were executed, accepted by the bank and acknowledged by Lake View. Under this agreement, the secured obligations were:

> "(a) [T]he indebtedness evidenced by a Promissory Note executed by Debtor to the Bank dated July 25, 1979 in the principal amount of *** ($90,000) and any extensions, renewals or refinancings thereof;
>
> (b) any other indebtedness or liability of Debtor to the Bank whether direct or indirect, joint or several, absolute or contingent, now or hereafter existing, however created and however evidenced."

On February 4, 1980, John Boumenot borrowed an additional $10,000 from NCB. According to the terms of the promissory note, payment was secured by "a security interest in and lien upon any property of any of the undersigned now or hereafter in the possession or control of the Bank." On the same day, John Boumenot executed an assignment of his remaining beneficial interest in trust No. 5335 to his brother Albert. However, this assignment was not accepted by Lake View because, according to the plaintiff, the collateral assignment of this interest had not been released by NCB. On or shortly after February 7, 1980, the $90,000 loan executed in July 1979 was paid, and on February 13, 1980, Albert and John Boumenot borrowed $20,000 which was secured, in part, by the beneficial interest in trust No. 5335. Financial statements filed by both brothers in June and

July of 1980 indicated that they each owned 50% beneficial interest in the property at issue.

In January 1981, John and Albert Boumenot borrowed $20,000 from NCB, which was again secured, in part, by trust No. 5335, and in April of 1981, John borrowed another $10,000 from the bank. On May 20, 1981, John Boumenot and Edward Kane borrowed $100,000 from the bank and secured the loan with a beneficial interest in several land trusts held by Lake View including trust No. 5335 and a trust deed on property at 1652 North Bell in Chicago. The loan was also personally guaranteed by Edward Kane in the amount of $55,000. At this time NCB also procured a "Power to Hypothecate" from Albert Boumenot in which he assigned his beneficial interest in trust No. 5335 as collateral for the $100,000 loan to John Boumenot. In June of 1981, John Boumenot received another loan from NCB in the amount of $10,000.

In May 1982, Lake View as trustee of trust No. 5792 (1652 North Bell Street) delivered to NCB an installment note and trust deed in the amount of $51,000 as evidence of a loan from NCB in that amount. The loan was guaranteed by John Boumenot and Edward Kane. Payment of the 1982 note was applied to reduce the balance on the 1981 $100,000 loan by $50,000. In December 1982, NCB's collateral interest in the property identified as trust No. 4305, which had been one of the properties securing the 1979 loan and all subsequent loans to John Boumenot, was assigned back to him because, according to the bank, there was no equity in the property. In June 1985, John Boumenot assigned his beneficial interest in trust No. 5792 to Edward Kane, subject to its prior collateral assignment to NCB, and the assignment was accepted by Kane and Lake View.

On or around August 27, 1986, NCB declared the May 20, 1981, loan to be in default and immediately due and payable. At this time the outstanding balance on the loan was $46,104.72. On January 14, 1987, the parties were served with notice of the Uniform Commercial Code (UCC) (Ill. Rev. Stat. 1989, ch. 26, par. 1–101 *et seq.*) sale of the beneficial interest in trust No. 5335 to be held the following month. On February 18, 1987, 50% of the beneficial interest in trust No. 5335 was sold to NCB for $40,000. At the time of the sale the outstanding balances on the loans which were partially secured by this interest were:

    a. loan dated February 13, 1980—$9,000.
    b. loan dated May 20, 1981—$42,000.
    c. loan dated June 12, 1981—$10,000.
    d. loan dated October 31, 1983—$30,900.

Although Kane paid the outstanding balance on the installment note of May 1982 regarding trust No. 5792, and NCB released its trust deed and security interest in the property, Kane was not released from his obligation regarding the loan of May 20, 1981.

■ Plaintiff contends that the trial court's finding that NCB had a valid security interest in trust No. 5335 and was, therefore, entitled to sell the pledged collateral is erroneous. Plaintiff's first argument is that NCB failed to prove an indebtedness at the time of the sale because it did not prove the exact amount outstanding. In support of his argument, plaintiff refers to the inconsistent references regarding the outstanding balance on the $100,000 loan. One of the stipulations states that NCB declared the remaining balance on the loan to be $46,104.72 as of August 27, 1986, and the trial court's finding of fact was that as of February 18, 1987, the amount due on the loan was $42,000. Plaintiff claims that there were no documents submitted to prove the actual amount owed on this loan or any of the other loans by John Boumenot. He further claims that he is entitled to have the exact amount of the debt proven before his home is taken for such debt.

The trial court's finding of fact No. 44 lists the loans of John Boumenot which had an outstanding balance at the time of the sale and the amount remaining on each loan. Whether the amount due on the 1981 loan was $42,000 or $46,104, the total amount of the remaining balance was about $91,000. NCB only received $40,000 from the sale of plaintiff's beneficial interest as partial payment of the loans. In order to confirm the UCC sale, the bank's only burden was to prove that it had a perfected security interest at the time of the sale. The trial court found that NCB had a security interest in the amount stated. The court's finding was based on the testimony of Theresa Gomez, the vice-president in charge of loans at the time of the trial. Plaintiff presented no evidence which contradicted her testimony or the trial court's subsequent finding.

■ Plaintiff further argues that because he executed the power to hypothecate in blank, it was not an effective assignment of his beneficial interest in the subject property, and the trial court's findings to the contrary were erroneous. At the trial, plaintiff testified that the signature on the document was his signature, but he did not remember signing it, for which loan it was signed or at whose request. He also stated that he would not have signed the document in its existing form. The trial court also heard the testimony of several bank employees that it was not their practice to have documents executed in blank. Although plaintiff referred to documents in John Boumenot's

loan file which were executed in blank, the bank gave a specific explanation for their existence.

The trial court concluded that plaintiff failed to show by a preponderance of evidence that he signed the power to hypothecate in blank after hearing plaintiff's testimony as well as that of the bank employees. There is a strong presumption in favor of the findings of the trial court, which has heard the witnesses' testimony and observed their demeanor. (*Lawter International, Inc. v. Carroll* (1983), 116 Ill. App. 3d 717, 733, 451 N.E.2d 1338.) Furthermore, where the evidence is only conflicting, and the evaluation of the weight or credibility of the evidence was made by a trial judge, a reviewing court has no right to substitute its judgment for that of the trier of fact unless the evidence is so unreasonable, improbable or unsatisfactory that a different conclusion is clearly required. (*Sunset Travel, Inc. v. Lovecchio* (1983), 113 Ill. App. 3d 669, 678, 447 N.E.2d 891.) In this case, the trial court's finding that plaintiff did not meet his burden of proof regarding his allegation that he executed the power to hypothecate in blank was a determination that could reasonably be made from the evidence presented. Thus this court cannot substitute its judgment for that of the trier of fact.

■ Plaintiff's third argument is that the trial court's conclusion regarding the July 25, 1979, security agreement was improper. In its "Conclusions of Law," No. 2, the trial court found that the security agreement executed in 1979, which assigned Albert and John Boumenot's beneficial interest in trust No. 5335 to NCB to secure a loan of $90,000, also secured future advances. The court's finding was based on the language in the security agreement which stated:

> "The obligations secured by this security agreement *** are the following: *** (b) any other indebtedness or liability of Debtor to the Bank whether direct or indirect, joint or several, absolute or contingent, now or hereafter existing, however created and however evidenced."

(See also Ill. Rev. Stat. 1979, ch. 26, par. 9—204(3); *National Acceptance Co. v. Exchange National Bank* (1968), 101 Ill. App. 2d 396, 404, 243 N.E.2d 264.) Plaintiff argues that the assignment of the beneficial interest in the subject property was extinguished on or about February 7, 1980, when the $90,000 loan was paid. Plaintiff supports his argument by reference to the testimony of J. Michael Perlman, who was the loan officer when the loan was paid. Plaintiff cites Perlman's statement at the trial that the failure of NCB to release the beneficial interest in trust No. 5335 when the $90,000 loan was paid was error. Plaintiff also claims that John Boumenot's attempted assignment of

his share of the beneficial interest in the land trust to Albert was evidence that John Boumenot believed that the property had been released. Plaintiff cites *Ledesma v. Cannonball, Inc.* (1989), 182 Ill. App. 3d 718, 538 N.E.2d 655, for the proposition that the effect of a release depends on the intent of the parties. He claims that the trial court should have concluded that it was the intent of NCB and John and Albert Boumenot that the beneficial interest be released. However, it is the intent of NCB which is significant because the bank was the only party who could effect the release. The only evidence that NCB intended such a release was the loan officer's statement 10 years after the transaction that it had been an error not to release the interest.

What plaintiff fails to address in his argument is that the assignment of the beneficial interest in trust No. 5335 secured "future advances" which included, among others, a loan for $10,000 to John Boumenot on February 4, 1980, which was prior to the payment of the loan for $90,000. Furthermore, from the time of the 1979 security agreement until the sale of the property at issue, John or Albert Boumenot was continuously indebted to the bank, and the assignment of the property continued to secure this indebtedness. Thus, the trial court's conclusions regarding the 1979 security agreement were supported by the evidence.

■ Plaintiff next argues that even if NCB had a valid interest in trust No. 5335 at the time of the May 1981 loan, the bank's subsequent action released that interest. The subsequent action plaintiff refers to was the release by the bank of the other interests assigned to secure the $100,000 loan, which were trust Nos. 5792 and 4305 as well as a trust deed for property at 1652 North Bell Street. Plaintiff also refers to the bank's subsequent action of modifying the terms of the note on the 1981 loan which included a written loan modification agreement.

Although plaintiff presents an extensive argument claiming that the trial court relied on the improper authority of *Federal Deposit Insurance Corp. v. Hardt* (C.D. Ill. 1986), 646 F. Supp. 209, and *McHenry State Bank v. Y & A Trucking, Inc.* (1983), 117 Ill. App. 3d 629, 454 N.E.2d 345, because these cases involved a guaranty relationship as opposed to a suretyship, he cites no authority for his position that the law is inapplicable to the instant case. Furthermore, the court in *McHenry State Bank* stated that, according to the Uniform Commercial Code, "a guarantor to an instrument is included within the term 'surety' and thus for purposes of the UCC it is ordinarily immaterial whether a person is a true surety, an absolute guarantor or a

conditional guarantor." (*McHenry State Bank*, 117 Ill. App. 3d at 632, citing Ill. Rev. Stat. 1981, ch. 26, par. 1—201(40).) Furthermore, the power to hypothecate provided that the bank treat the property pledged as though it belonged to John Boumenot and not Albert Boumenot. The notes executed by John Boumenot in favor of NCB which were outstanding at the time of the 1987 sale contained provisions that NCB was given discretion to make any compromise or settlement as to the collateral securing the notes. Therefore, plaintiff waived any right to consent to NCB's exercise of this discretion. Additionally, as the trial court found in Nos. 27 and 28 in its conclusion of law:

> "None of the collateral, released by North Community Bank securing the obligations subject to the February 18, 1987 Code Sale, had any equity running in favor of North Community Bank. *** [I]ts release [of the collateral] did not materially prejudice Albert Boumenot's rights as a guarantor, and, therefore, the release of said collateral was not unreasonable."

The trial court thus concluded that the subsequent actions of NCB did not discharge the plaintiff's obligations. Plaintiff has failed to present any evidence or authority to show that the trial court's findings were incorrect.

■ Plaintiff's final argument is that the trial court's judgment deprived him and his wife of their homestead rights. Throughout the time that plaintiff pledged his interest in trust No. 5335 to NCB to secure loans, Illinois did not recognize a homestead claim regarding a personal property interest in a land trust. (See Ill. Rev. Stat. 1981, ch. 52, par. 1.) However, the act was subsequently amended to include such an interest. (See Ill. Rev. Stat. 1981, ch. 52, par. 1.) However, the act was subsequently amended to include such an interest. (See Ill. Rev. Stat. 1983, ch. 110, par. 12—901.) Relying upon *Bank of Illmo v. Simmons* (1986), 142 Ill. App. 3d 741, 745, 492 N.E.2d 207, plaintiff's position is that he is entitled to the benefit of the homestead statute in effect at the time of trial as opposed to the one in effect at the time of the contract. However, even assuming the propriety of *Bank of Illmo* (see *Capitol Bank & Trust v. Fascetta* (7th Cir. 1985), 77 F.2d 1077 for a contrary result), we decline to address plaintiff's homestead issue because it was not properly raised in the trial court.

Even though plaintiff testified that he and his family resided at 1320 North Hoyne (trust No. 5335), he did not raise the issue of his entitlement to a homestead exemption at any point during the trial. Plaintiff also failed to raise this issue in either his proposed findings

of fact and conclusions of law or in his response to NCB's proposed findings of fact and conclusions of law. It was not until his motion to vacate, reconsider, or modify the trial court's judgment order that plaintiff first asserted his right to a homestead exemption. Plaintiff filed this motion pursuant to section 2—1203 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1203). However, it was improper for plaintiff to be silent as to this issue throughout the trial but assert his right to this exemption for the first time in a motion for reconsideration. (*Mendelson v. Lillard* (1980), 83 Ill. App. 3d 1088, 1096, 404 N.E.2d 964.) In *First State Bank v. Leffelman* (1988), 167 Ill. App. 3d 362, 521 N.E.2d 195, the court held that the assertion of a homestead claim raised for the first time in a motion for relief from judgment pursuant to section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401) was untimely and that errors properly forming the basis of this petition must not have been known to the moving party at the time of judgment. (*First State Bank*, 167 Ill. App. 3d at 365.) Similarly in this case, plaintiff acknowledged his awareness of his homestead claim at the trial when he argued, although incorrectly, that his testimony regarding residence was synonymous with the assertion of a homestead claim.

In his petition for rehearing plaintiff raises two arguments in support of his contention that his claim to a homestead exemption was not waived. His first argument is that he raised this issue at trial when he testified that he resided at 1320 North Hoyne. As discussed above, the plaintiff's statement of residency is not equivalent to a claim of a homestead exemption. Plaintiff also argues that the homestead issue can properly be raised by motion after the entry of judgment. Plaintiff first claims that he was directed by the trial court to raise the issue in his motion for reconsideration. However, the statements by the trial court which plaintiff cites in support of this argument were directed to defendant Kane's counsel in response to counsel's request to present additional law regarding Kane's liability to plaintiff. Because the court had already issued its findings of fact and conclusions of law, Kane's counsel was directed to file a motion for reconsideration after the entry of judgment. However, plaintiff's homestead issue was not a newly discovered law or fact, and the trial court's directive to Kane's attorney was not applicable to plaintiff's issue.

Finally, we are unpersuaded by several cases plaintiff has cited in support of his argument. In *DeMartini v. DeMartini* (1940), 304 Ill. App. 165, 26 N.E.2d 167, one of the cases relied on by plaintiff, the court stated that the question of the homestead exemption became im-

portant only after the decree was entered and an attempt was made to sell the homestead real estate on execution. (*DeMartini*, 304 Ill. App. at 170.) However, in the case *sub judice* the proceeding was a confirmation of a sale which had already occurred. Therefore, it was the proceeding at which plaintiff's homestead claim should have been raised, unlike *DeMartini* and the other two cases cited by plaintiff where the trial court proceeding was a money judgment and execution prior to any attempted sale of the homestead real estate. In fact, the party claiming a homestead exemption in *Dixon v. Moller* (1976), 42 Ill. App. 3d 688, 356 N.E.2d 599, asserted his claim after the money judgment and execution proceeding but in his answer to the plaintiff's complaint in a subsequent proceeding for partition of the property. In *Brown v. Nelson* (1942), 379 Ill. 371, 41 N.E.2d 499, also a money judgment and execution proceeding, the court held that the party claiming the homestead exemption should seek redress from the court which ordered the execution rather than a court of equity.

In sum, we conclude that plaintiff's failure to assert his homestead claim in the trial court was untimely and constitutes a waiver of this issue.

### APPEAL OF EDWARD KANE

■ Kane's main contention is that the trial court erred in concluding that Albert Boumenot had a right of subrogation against him. The trial court concluded that Kane was not released from his obligation on the May 1981 loan. Because plaintiff's property was sold to pay a debt belonging to Kane, plaintiff had a right of subrogation against him. The evidence supporting the court's conclusions was the May 1981 note and security agreement which stated that the undersigned debtors (Kane and John Boumenot) jointly and severally promised to pay to NCB $100,000.

Kane argues that he was only liable for $55,000 because he executed a personal guaranty on the loan which was limited to that amount. He further argues that his liability was reduced when the loan was modified and that he subsequently paid off the reduced amount. However, the execution of a guaranty by a maker does not change his primary obligation. (*American National Bank v. Warner* (1984), 127 Ill. App. 3d 203, 207, 468 N.E.2d 184; *Rock Island Bank & Trust Co. v. Stauduhar* (1978), 59 Ill. App. 3d 892, 901, 375 N.E.2d 1383.) Further, none of the documents related to the loan modification indicate that the scope of Kane's liability was reduced. The president of NCB also testified that Kane had not cleared up his loan with the bank, and Kane himself acknowledged that he had never been given a

release on the $100,000 loan. Therefore, the trial court's conclusion that Kane was still obligated for the payment of the May 1981 loan was supported by the evidence, and its conclusion that plaintiff had a right of subrogation against Kane was proper. See *In re Estate of Hammond* (1986), 141 Ill. App. 3d 963, 967, 491 N.E.2d 84.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

McNAMARA and LaPORTA, JJ., concur.